## CLARK ET AL. *v.* STATE OF INDIANA.

[No. 14,006. Filed October 8, 1930. Rehearing denied December 9, 1930. Transfer denied February 3, 1933.]

*Frank E. Gilkison,* for appellants.

*James M. Ogden,* Attorney-General, and *Earl B. Stroup,* Deputy Attorney-General, for the State.

PER CURIAM.—The appellants were charged by affidavit, duly approved and filed in the Orange Circuit Court, with the offense of malicious trespass upon the lands of named persons. The causes were consolidated and tried by the court and resulted in a finding of guilty as to each defendant. From the action of the court in overruling their motion for a new trial, this appeal is prosecuted, the contention being that the finding of the court was not sustained by sufficient evidence, and that it was contrary to law.

The appellants in this appeal plant themselves upon the long established and well recognized proposition that the criminal law can not be used to try disputed rights in and to real property.

It appears from the record that the appellants own lands lying to the north of lands owned by the prosecuting witness; that the land upon which the prosecuting witness resides and owns (40 acres) is in Orange county and has an improved public highway on the south side thereof; that the prosecuting witness also owns the forty acres lying immediately west of that upon which he resides, in Martin county, and that the appellants own the eighty acres lying immediately to the north of the Emmons land, Emmons being the prosecuting witness. The accompanying plat will serve to illustrate the holdings and contentions of the several parties.

Some two or three years ago the highway (No. 3 on the plat) was improved and the line of said roadway

1—Clark Roadway.
2—Improved Road on South.
3—Improved Road on East.
4—Roadway Vacated When Road
No. 3 was Improved.

was changed, as indicated on said plat (No. 4), and this left a small tract of the Qualkenbush land to the west of said roadway. This tract Emmons purchased, and, upon the completion of said improvement of said road, built a wire fence across both the north and south ends thereof. It is for the cutting and tearing down of these fences that these prosecutions were instituted.

Upon the trial of the case the appellant, Oscar Clark, testified that when he was ordered by Emmons to stay off his land—the vacated roadway—he said to Emmons: "We have a right to travel it, and we will travel it when we want to." He further testified that he believed he had a right to travel "that old roadway."

The appellant, Elza Clark, testified that Emmons had ordered him not to travel that "old roadway" and that

he had told Emmons that he would travel it when he got ready. He further testified that on July 5, 1929, Emmons had ordered him not to travel that roadway, and accused the witness of cutting the wire fence, and witness told Emmons that he, witness, had cut his fence, and that he would cut it again if he put it up. This witness also testified that he believed that he had a right to travel that old roadway, and that he intended to go through there regardless of the law. It also appears that the Clarks have a roadway—own a strip of land which was conveyed to them for "road purposes"— off of and along the west side of the forty acre tract upon which Emmons resides, which would, if put in shape, furnish them a way of ingress and egress to and from their said lands, but their excuse for not using it was that, on account of a hill over which they could not get with wagon and team, they used the old way. But there is no contention that a roadway, over which wagons could be taken, could not be constructed on their said way.

There is no contention disclosed by this record that said change in said highway (No. 3) was not in all things duly made, and said old line of roadway thereby legally abandoned, and we must, therefore, assume that all proceedings in reference to said change of said roadway were, in all things, regular, and according to law, and it is well settled that when a highway, or a portion thereof, is changed by relocation, the easement therein formerly held by the public—the right to travel thereon—is fully terminated.

If the appellants were of the opinion that they had a right to continue to travel over said abandoned roadway and that Emmons was wrongfully interfering with them in the exercise of that right, the courts were open to them for redress, and to declare and protect any right or rights they might have in the premises. If Emmons

was interfering with the legal rights of the appellants, they should have gone into court and asked for injunctive relief. This they did not do, but chose, as it were, to take the law "into their own hands."

It is also urged that as the appellants "thought" they had a right to do what they did, no malice was proven, and hence the finding was contrary to law. In cases of this kind express malice need not be shown if the facts and circumstances in evidence are such that therefrom the law will imply malice on the part of the wrongdoer. In this case it appears without dispute that the appellants, after they had been forbidden to enter upon said land and after they had been warned not to interfere with said fence, deliberately cut and destroyed the same and again entered upon said lands. It has been many times held that malice will be inferred or implied where the facts and circumstances in evidence show, on the part of the actor, a reckless disregard of the rights of the complaining party. See 18 R. C. L. p. 2, and authorities there cited.

The record discloses no claim on the part of appellants of any right in and to the said lands upon which they trespassed; it simply shows that they had a mistaken idea as to what the law was, when applied to the facts of this case. We find no error.

Affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—The appellants have filed their petition for a rehearing and in said petition they claim that we erred in holding the appellants guilty of "criminal trespass," in the face of "a record which shows that they, in good faith, believed they had a right" to travel said roadway and to do what they did do.

It is true that each of the appellants testified that they "believed they had a right to travel the roadway"

672

in question, but it is also true that one of the appellants testified that he had been told not to travel said roadway, and had been warned not to cut and tear down said fence. This appellant also testified that he had told the prosecuting witness that he had cut this fence and that he would cut it again if it "was put up." He further testified that it was his intention to "go through there regardless of the law." The testimony of the other appellant was, in substance, the same.

The testimony thus given by these appellants completely overthrew the alleged defense of "good faith belief" in their right to do what they did. It shows that they were men who were ready to take the law into their own hands in total disregard of the rights of the other party; it conclusively showed that they acted in reckless disregard of the right of the other party, and an act so done, is, in law, deemed to have been done maliciously.

The petition for rehearing is denied.